Court. My name is Erin Choi and I am pro bono counsel for the petitioners in this asylum case. Gloria Marina Diaz-Rivas and her daughter Liliana Sofia Gutierrez Diaz. Your Honors, Ms. Diaz-Rivas and her daughter came to the U.S. in 2015 seeking asylum from El Salvador. There are a number of issues in this case but for purposes of purposes of the limited time we have for argument I will focus on just two today unless your honors would like to discuss others. Namely I will discuss the gang persecution claim and also the equal protection claim. So in this case turning first to the gang persecution claim. This case must be reversed and remanded because the board's decision that that there was not a sufficient nexus between the harm and the fears that Ms. Diaz-Rivas had and her membership in the Gutierrez Diaz family was not supported by substantial evidence and a proper mixed motive analysis was not applied. Because the IJ and the board ignored uncontroverted evidence and failed to conduct this appropriate mixed motive analysis this case this was reversible error. In particular there's no dispute that a mixed motive analysis was not done by the IJ. The IJ performed a cursory nexus analysis and misapplied legal standards and failed to even address whether Ms. Diaz-Rivas' membership in the Gutierrez Diaz family which is the particular social group at issue was or will be at least one central reason for persecution by the gangs. The IJ rationale at least in part was that this was sort of retaliation for complaints and therefore it wasn't family-based right? That's correct. In part. In part yes and just with respect to that though it was erroneous for excuse me so it was appropriate inappropriate for them not to explicitly assess whether membership in the family however was at least one central reason for the persecution irrespective of whether there may have been other unprotected grounds for which she was persecuted. Wasn't there evidence in your clients favor that some of the conduct by MS-13 began before there were complaints or protests? Yes your honor well there's evidence in the record that from the government that if you could actually could you restate the question if you don't mind? It's a friendly question. Yes. There was at least some evidence before the IJ that some of the conduct that you claim was family-based took place before the grounds that the IJ asserted. Yes your honor. Which suggests at least in one plausible view that at least some of the conduct of MS-13 was based on family membership. That's correct. Not protest or denials by the family in terms of what the gang wanted to leave them alone. Yes your honor and in addition we would submit that it's not the reasons for targeting the gang are not the relevant issue here. The issue is that there is an animus against this family by the gang and that the gang is targeting the family and that she is being targeted as a member of that family that is targeted is the central issue here and that is an analysis that was not performed by the IJ or the board. My point is that and I don't know if I have it right or not but my point is that the magistrate's judge thought in part that the reason for the targeting was that Ms. Diaz-Rivas and family members went to the police to the military to the authorities. But one critical fact that's undisputed before that is that Mr. Gutierrez disappeared. Yes your honor. Probably because of something having to do with MS-13 before there were the complaints about his disappearance. That's correct. And so there's it seems to me a decent basis for thinking that at least the initial targeting was family-based and maybe not necessarily just complaint-based. Yes your honor and indeed we have in this case uncontroverted corroborating evidence of it being she being targeted because of her membership in the family in the form of the police report from Sergeant Reyes the El Salvador police in the record at a124 which says that the gang has given the green light to kill the Gutierrez Diaz family and no other reason that they're targeted because if and if any of them appear at that area or the area where the gang conducts its activities they would be killed and their bodies would disappear as was the case with the brother who had disappeared. I'm sorry if I missed this but was that before or after the family reported the brother missing? The police report is after the family reported her missing however in this case it was because the analysis was not done as to whether she should have whether she was sought to be harmed whether they sought to harm her because of her membership in the family and so that was erroneous and it was a reversible error when you don't conduct that explicit mixed motive analysis that's required and so the focus on the gang's reason for targeting the family rather than her membership in the family itself was incorrect and indeed just to point out the IJ in this case wholly failed to consider the police report in the context of the gang violence claim and instead merely used the presence of a police report in the or the lack of a police report in the domestic violence claim against her in comparing as to they filed a police report with respect to this disappearance but then didn't even acknowledge that the police had specifically said in this report that the green light license to kill was to the family itself and not for any other reason and that they had received death threats and had the necessity to move abroad in that police report at 8-124 so it's it was critical evidence that was not considered at all by the IJ and then the board did not look at that independently either so for those reasons the the standard that was applied here was incorrect and the evidence substantial evidence in the record that wasn't considered compels the contrary finding and so this case should be reversed and remanded on that reason to a different immigration court as I will explain with respect to our equal protection issue if I may switch gears to that with respect to the equal protection issue when you look at the mistakes that were made in this case on on the analysis that was done with the mixed motive issue as well as other mistakes in the IJ's decision coupled with the Atlanta immigration courts shockingly low asylum grant rate of only 2% compared to the average national grant rate of 46% and other immigration courts across the country during that same period coupled with the evidence of this in this case of the IJ deciding this case on personal bias rather than the actual evidence there you're suggest I guess you're that that latter argument is based on some of the comments that the IJ made about at the beginning of the hearing about the type of claim that was being presented and how there were many of these yes your honor he described it as this is another one of those cases in that in addition just throughout ignored evidence in the state and used but at the same time used evidence when convenient for him to well but generally that's the province of a fact finder and a fact finder can decide to accept some evidence reject some evidence find some persuasive find not persuasive and again generally speaking only in incorrect legal or that's correct your honor but when coupled with we see an overwhelming denial of asylum applicants and applications in this court and that coupled with the the statements here throughout the record more so than just saying that this is one of those cases he without even inexplicably just ignores the testimony of our expert witness based on his own personal view of the record and saying he ignores the evidence from the expert that because on the basis of he says that excuse me he says that the so it okay excuse me and there's just a number of examples that he says everyone is okay the rest of her family is okay in El Salvador but there's no evidence in the record of that one way or the other we don't know in the record if everyone's okay and that for him to say that everyone is okay and that's why he won't consider the experts testimony it's it's not supported by the record and in addition he like I said use the police report when it's convenient on the rape claim and saying that she you know she showed that she was able to file a police report in one instance so then why couldn't she have done it in the other instance but then doesn't even consider the police report or mention it at all in the context of this this even though it's uncontroverted in the record no the credibility of that document has not at all been called into question and it's just wholly ignored so the fact of that and then also the statements that the judge made about her not having a fear of future harm when there was no evidence that when she was had left her home to go to the other location in El Salvador for a couple of weeks while she tried to get a passport there was evidence in in the record that they received threatening phone calls saying that the gang knew where they were and that the IJ didn't even acknowledge that at all and so for those reasons just this is there's the record is riddled with evidence and examples of this type of previous predisposition and the fact that the judge looked at this as he viewed it as a case where I saw these they're just fearing general gang violence but that couldn't be further from the truth in this case your honors she feared very specific threats to her family and her threat threats were on account of her membership in that family so I see my time is up and I will know you've got a couple of more questions okay me and I'll ask miss lack the same question it appears that neither one of you think that the acting attorney general's requests for review of in Ray LEA affects anything in this case even though that BIA decision deals with membership in a social group like a family you're confident that that doesn't affect anything and that we shouldn't wait to see what Department of Justice does with LEA whether we can just go forward yes your honor we can go forward in this case in the case below there was no there was it was presumed to be a cognizable social group so that's not an issue here and that the issue in LEA has not been decided and we submit that it should not hold up the court's review of this matter okay thank you very much miss joy you've saved your time for rebuttal miss slack you may have pleased the court Michelle slack on behalf of the United States Attorney General petitioner in her in her brief raises four issues before you get to those so I don't interrupt you yes your honor you also believe that the fact that the acting attorney general has requested review and briefing in LEA doesn't affect what we do here and we should go forward that's what you said and that's what miss choice said in there in your 28 J letters I just want to make sure that both of you have that view perhaps I should clarify your honor it is the government's position that based on this courts existing mode of analysis addressing what does it mean to be one central reason for the being alleged the court can move forward because in this particular case the board merely assumed that family could be a particular social group and didn't actually decide that issue that would have to be decided if the court does not think that the mode of analysis was correctly done in this case but I will say you did you assume that did you concede that I don't mean you personally did the department concede before the IJ that family membership under the right circumstances was a cognizable social group for purposes of persecution concede no your honor what did the government tell the IJ on that point it's not addressed in front of the IJ what position that the government take in its written papers on that issue but that actual issue was never addressed by the immigration judge or the Board of Immigration appeals I'm talking about the government on the litigation side not not the IJ or the BIA what if anything did the attorney for the government tell the IJ about that issue at the hearing that it did he or she take any position make any mention say anything about it or just proceed as though the issue were non-existent or something else I took no position that I'm aware of during the hearing in front of the immigration judge about whether or not any of the purported social particular social groups were cognizable did you took no position at all just told the IJ go forward we'll assume you don't have to decide they lose on other grounds they didn't say any of that they lose on other grounds was the position taken that that that was unnecessary in this particular case and the board takes the same position that it's going to that it is cognizable but that it they failed to demonstrate the motive the on account of requirement okay and I just want to say then to clarify the acting attorney general certification in LEA does suggest that we could see any thing come out of the certification of LEA including under what circumstances family might be a particular social group so in that vein I won't say that it has no bearing on this case but because of this courts case law granted mostly unpublished case law doing conducting a similar mode of analysis it doesn't seem like it's necessary to either stay this case or remanded in the certification of the four issues that are raised in the brief by petitioner they fall into two categories two of the issues relate to fact-finding two of the issues relate to constitutional claims I'm going to begin by addressing the fact-finding and in particular I'd like to address the fact-finding that was at issue during petitioners opening argument that happened to do with the gang related asylum claim the Board of Immigration Appeals actually did conduct a mixed mode of analysis but found that to whatever extent family relates to this case it is merely tangential because there is no indication of an animus against the respondent and her family based on biological ties historical status and other unique features of the family unit this is very similar mode of analysis that this court conducted in Madea Acosta very recently in which the court held that that there was no dispute and a feud over a nephew's death but animus comes from somewhere animus just doesn't drop out of the sky it usually begins with something and then it leads to targeted action sometimes sometimes it's not like if you're born and you say I have a hatred for the Gutierrez family and when I become of age I'm gonna exact vengeance on the Gutierrez family I mean animus comes from somewhere there's a reason for it and it's not inconceivable that something that might arise that might begin with a payment of more extortion money may then turn into a family matter and a family animus yes your honor think of Romeo and Juliet over time I know it's a fictional story but over time that animus became family-based over whatever the initial reason for the slight might have been you don't think that's a possibility over time your honor it became just a family dispute of essentially a family feud in fact I've thought a lot about how the Capulets and the Montagues do present kind of a fictional setting in which family might possibly be but again as I I'm reluctant to address too much when family might be a particular social group given that's exactly what we're trading on that assumption aren't we and you've told us to go forward if if you didn't challenge that below and I'm not saying you waived anything but if you didn't contest it below and the IJ didn't address it and assumed it and the BIA assumed it we have to assume it here too right because you're not asking us to hold that family membership can never be a protected social group right no your honor would have to be remanded if you found you're not asking for a remand well if if the case cannot be sustained upon the reasons given by the agency it would have to be remanded no no I know that but you're not affirmatively asking for a remand no you think I think a denial of the petition is in order so if you're asking for that and you haven't affirmatively asked in your brief for us to hold as a matter of law that membership in a family can be protected status don't we have to proceed on the despite LEA for purposes of addressing whether or not this particular case involves threatened persecution on account of right right for this case we have to make that same assumption right yes your honor you're not asking us to hold to the contrary as a matter of law no your honor okay so that assumption then exist and we take it to correct or not correct for purposes of deciding this case we assume at the very beginning that membership in a family is protected social status for asylum purposes and then the question for us is whether or not the BIA erred in finding that whatever happened here was not an account of that family membership is that the way the analysis proceeds or no essentially yes your honor like a 12b6 you don't necessarily have to decide everything if there's some element of a cause of action that that there isn't sufficient allegations it's it's along those lines we would if family is a particular social group then we would address the next component required element of an asylum claim being that it has to have a motive of the persecutor on account of that particular social group now miss Diaz Rivas is this is a derivative petition right yes how do we address the daughter's claim if the daughter never complained to the authorities how you can you say that the daughter's claim was that any threats against the daughter any persecution against the daughter were on account of the complaint to the authorities and not something else that the daughter's claim stands or falls as a derivative based on whether or not the mother's claim stands or falls you don't know making a separate claim it's a derivative of the mother's claim but you don't evaluate the daughter's circumstances separately not in a derivative claim your honor but I would like to address the the con family context of it in according to the petitioner's testimony the entire family was looking for mr. Gutierrez Fidel Gutierrez the children her sons the brothers the sisters her they were all engaging in the search and they were all seen by gang members there's no suggestion that that there's any particular family member that wasn't somehow involved in reporting to the let's talk about practical reality on the ground okay you think that if miss Diaz Rivas and her family members had not gone to the authorities that ms-13 would have just left him alone well they like most people like yeah we took one of your family members you're good well your honor it's hard to say what they would have done yes it is very hard to say what they would have done but say that the only reason that ms-13 poses a threat to miss Diaz Rivas and her family members is because they complained to the authorities it seems to me ignores the very crucial antecedent fact that they took mr. Gutierrez before there were any complaints it's not as if threats and problems began after the Gutierrez Diaz Rivas family complained to the authorities about the extortion demands right that would be a different scenario so if mr. Gutierrez or other family members went to the authorities and said hey they're asking for I've been paying him this amount of money for a long time but now they're asking for double or triple I can't afford it I need the military's help or the police's help and then something happened okay I can see that there's maybe a causal break there but here before there were any complaints to the authorities ms-13 had already taken action they had already disappeared yes your honor but the evidence suggests it wasn't because of family that mr. Gutierrez is it was disappeared it was because he stopped paying the extortion but it but the question is not mr. Gutierrez the question is the threats to the others and once he's been taken you think there's there's no on account of after he's been taken that now the family is seen as getting a free pass that there's nothing else that is going to happen to the family because ms-13 has taken its pound of flesh but no it would possibly be because no one is paying the extortion anymore in this case it's the it's there's evidence throughout you have such a very different view of the way that gang activity works in Latin America than I do but that that gang activity is something that everyone in Central America is facing and then they act and ms-13 acts under a code of conduct that says hey you know we killed one of yours but if you pay everything is going to be okay we're not going to have any animus against your family members despite what your patriarch may have done do we know if they sought if ms-13 sought extortion payments from the remaining family members there's no evidence that that they did that they were threatening them because they wanted them to stop searching for Fidel Gutierrez that's what the record reveals that the threats were based on and do we know stop searching for him do we know anything about the original genesis of their extortion requirements from mr. Gutierrez just that he was a wealthy businessman and that they sought extortion money women clothing from him to to protect the family and that he could no longer keep up with their demands and stop paying it and at that point it appears that they sought and then that from there it became about the reports to the police and the search for Fidel Gutierrez it's throughout the record it's in the petitioners testimony it's in the experts testimony it's even in the letter from sergeant Reyes that that was the reason for the threats against them I see that my time is over there are no further questions you're gonna stay up a little longer okay I've got a couple of more questions for you if you don't mind the BIA said with regard to the equal protection claim that it had no jurisdiction to assess the claim but it cited only a BIA decision that said that the BIA has no legal authority to strike down a federal statute is unconstitutional isn't there a big difference between a denial of due process let's say let's say let's say in a hypothetical case that an IJ prevents a petitioner in an asylum case from presenting any evidence whatsoever and says I don't want to listen to your evidence listens to the government's evidence but not the petitioner denies asylum relief appeal to the BIA the claim is denial of due process I was denied a chance to present my side of the evidence I had my witnesses there I had done everything the judge had asked I didn't present I didn't get a chance to present any evidence whatsoever and that's why I lost my due process rights were violated please reverse and remand for an evidentiary for a hearing does the BIA have jurisdiction to address that claim yes your honor even though that's constitutional yes your honor why not address the constitutional claim in this case then I believe because like legislation it's something that cuts across this equal protection challenge is a systemic challenge it's essentially saying the entire court system has this these these differences in the way that statistically cases are being handled where do you raise such a claim then in a in an original habeas petition under 2241 in a federal district court in Atlanta I'm not sure where it could be your honor in this particular let's make the facts just a little bit worse for you in a hypothetical and you tell me where this clay this claim and I'm not I'm not talking about the merits of the claim I'm talking about the justiciability of the claim let's say that for a period of five years the immigration court in a given city whatever city we can think of was denying asylum applications from wherever and by whomever at a 100% clip nobody was getting relief a hundred percent for five years how would that claim get adjudicated well first of all in the first instance it would get adjudicated in the individual no I'm talking about the systemic claim that there is something seriously wrong with the immigration court in that jurisdiction because not a single person has gotten asylum in five years and that can't possibly be correct assuming the numbers are big enough to be able to have a statistical sampling where does that claim get adjudicated I'm not talking about how the claim came comes out I just want to know where it gets litigated it would have to be someplace where you could build a record I would say in it possibly under 1331 in district court raising an equal protection challenge but in this particular case this isn't an equal protection claim an equal protection claim generally speaking comes when there's an express classification and differentiation between two groups of similarly situated people in this case there is no express differentiation in those are all those are all aliens no it was they're all being treated the same they're all being denied and they're all aliens so there's no equal protection claim there's nothing that says Atlanta you have a quota you're only allowed to approve 2% no you're right you're right but numbers don't always tell a story and you've got this Rayleigh's very famous quip that there are lies damn lies and statistics and so I'm aware of the fact that numbers don't always tell you a story and can often be misleading but numbers can sometimes begin to tell a story and the difference between the rate of asylum grants elsewhere in the country in Atlanta is pretty stark do you think or not but you also have all these different factors that may be in the mix like don't have similarly situated person like what are the other factors Atlanta isn't taking asylum applications only from people from Jamaica or people from Great Britain they're taking them from everywhere like every other jurisdiction in the country so do you explain how do you explain different countries different kinds of asylum claims substantially less claims aren't get granted based on particular social group than they do on the ones that are actually specified in the statute whether or not there's credibility issues whether or not there are issues with regard to the next you're trying to bring it back to an individual analysis and I'm suggesting to you that when the numbers may get big enough the disparity may get big enough maybe there's a reason to dig a little bit more and find out why maybe you're right maybe all of that disparity gets explained by individual circumstances that many of many of the asylum applicants in Atlanta were from these countries where there generally isn't persecution and they're really in the State Department reports generally say things are okay there maybe they're by people who had very weak claims of membership in a protected social group maybe all of those people were found not credible but without all that information these numbers create a very very troubling image and and it just that your honor that we may we may need more we don't have on this record we don't have an equal protection claim your honor be careful what you wish for because if that case gets filed in a federal district court with federal question jurisdiction maybe not as an equal protection claim but as a due process claim and discovery begins and actually your honor makes a good point this in the end this really just sound like a repackaging of the petitioners due process claim no those are different claims because the this claim whether it has merit or not whether it's justiciable or not as a systemic claim her other due process claim is individual to her and what happened to her in her case this one is there's something rotten in the immigration court in Atlanta because you can't explain those numbers it's a suggestion that all of the immigration judges in or that they have an unwritten quota right or that they've been given a certain message that numbers are not supposed to be above a certain number and they're applying that message with a vengeance there are a lot of possible good possibilities for that disparity a lot of them innocent and a lot of them explainable there are also a lot of really bad ones but it sounds a little bit like the Supreme Court's decision in Walmart versus Dukes your honor we're talking about individual discretionary decisions made in individual cases with individual facts and asylum is very fact-based you're not as you're not as troubled by the disparity in numbers as I am so we'll leave it we'll leave it at that but thank you very much for your argument miss Falk we really appreciate it miss slack I'm sorry we really appreciate it thank you your honor I'm sure you have four minutes for argument thank you how do you how do you win on that claim by just showing raw numbers assuming the claim is even justiciable your honor statistical evidence of a discriminatory impact is sufficient to show intent and unequal application of the law and that but not always it's it may be enough to get you over the prima facie case bar in some scenarios but it doesn't always do that because disparities and numbers can sometimes be explained in a way that is appropriate and neutral correct your honor but in this case the disparity in numbers coupled with the evidence in our case of what has happened and the failure to consider the particular eyes circumstances of our client are indicative of this pervasive by it no but now you're trying to link an individual claim with a systemic claim yes and those two things don't marry very well it seems to me your honor regardless at a minimum we request a remand to a different immigration court for a consideration at least in our clients case on her particular issues in a different court but what did you did you assert that claim or you or or miss Diaz-Rivas assert that claim before the IJ the Atlanta immigration court issue yes no your honor we raised it in the Board of Immigration Appeals I believe okay why do you think the BIA has jurisdiction to address that claim the BIA has jurisdiction to address the equal protection claim why do you think why you think it does we think it does because the claim is relating to that courts unequal application of a law that is facially neutral but then is being applied in a way that is discriminatory and unequal and that is within its province to do they declined to do so but that was not appropriate would the BIA have remedial authority only as to your client or are you suggesting that they would have a broader remedial authority on that claim your honor I believe in this case we contend that it's related to our clients case in particular and we do believe there is a systemic issue but we've requested our in terms of the relief remand and to a different court for our client because her equal protection rights have been violated on the briefing to the court on that if that would be helpful but well miss slack says in part that if what you're really seeking is systemic relief then what you're looking at our class-based allegations to be able to get some sort of injunctive or remedial relief and I think that's one of the things that judge grant was asking you about whether the BIA has the authority to even provide that sort of relief should it be inclined to grant you any yes your honor I cannot answer definitively right now I would but would be happy to further look into that it's my understanding yeah I'm not quite sure but at least as to our client we believe that this is the proper approach and remedy in terms of raw statistics that you're referring to somewhere I read in all of this proceedings that for example in Buffalo New York they don't grant any and in El Paso Texas which I'm a little familiar with the same 2% that you're arguing is way insufficient and I remember somewhere else in regards to this record so statistically that those figures don't seem to help you any and sure doesn't show any disparate treatment if you're going to say all of those courts are are not treating people fairly those statistics help you respectfully your honor we're not necessarily making statements about those other courts and the statistics Atlanta is the third highest I understand that but you're quoting statistics saying that 2% is evidence of the fact of the disparate treatment yes but work but I'm saying that other courts don't have any better percentages than that either your honor those other course that you're talking about and I don't have it in front of me right now but I believe like for the Buffalo example there was a zero percent grant rate because there were zero applications that's correct but you know looking at those numbers are on the document that we provided and the statistics that are available and so you can see the number about El Paso which I'm a little familiar with in I think it showed that it was only a 2% grant isn't that correct your chart let's see your honor El Paso is 2% but again the numbers are significantly lower than in this court or in the Atlanta immigration court so it's still the numbers are not comparing the percentages the point is that there are numbers and there's statistics and I think yes judge addressed that what can what statistics sometimes show you well if we're just talking about the numbers though we have in the Atlanta immigration court in 2016 only 14 applications for asylum were granted as compared to 590 that were denied so essentially the clear majority of people applying for asylum in that court are being denied and justly or unjustly is that your position well that statistic shows that all those other people were unjustly denied your honor we know at least in our case we believe to have been unjustly denied so that's our position on that what and just to mention the government hasn't disputed the statistics and doesn't take issue with the grant rate being abysmally low in Atlanta and so just wanted to point that out and also unless I guess I've run over on my time are there any further questions you can you can wrap up okay I was just going to say I'm judge Jordan to your point you're absolutely right the animus does not just drop from the sky and in this case the record supports absolutely that before there were these complaints to the police there was absolutely evidence of the extortion of Fidel and that turned into a family target and so that's supported by our clients testimony in the in the record and the police report as well and just for those reasons we just ask that the court please reverse and remand this case for further proceedings all right thank you very much miss Choi thank you very much for your pro bono service on behalf of miss Diaz Rivas and miss like thank you very much for your argument as well we're in recess until tomorrow morning